## SUPREME COURT.

In the Matter of the application of St. Ann's Church in Brooklyn to mortgage their real estate.

*The vestry or trustees of a religious corporation, by virtue of their offices, have power to apply to the court for liberty to sell or mortgage real estate, irrespective of a vote of the corporators for that purpose. (Disagreeing with Wyatt agt. Benson, 23 Barb., 327, upon this point.)*

*Kings Special Term, May,* 1862.

Emott, Justice.   The papers upon which this application is made are exceedingly brief. They do not disclose in what particular manner the interests of the church will be promoted, by borrowing the money for which these mortgages are to be given, except that it is to be used in erecting buildings upon certain real estate of the society.   What these buildings are to be, or how their erection is to benefit the church is not stated.   The application is opposed by counsel, representing a person who proposes to advance or lend the money on the securities.   His opposition does not, however, turn upon any question of the fact that the use which the society intend to make of the money will be beneficial to them.   It was assumed on the argument on both sides, although it does not appear in the papers, that the purpose of the contemplated erections, and consequently of this loan, is to improve the property designated, in order to increase its revenues.

The objections suggested to granting an order permitting this church to mortgage its real estate rest upon a different ground.   They proceed upon the theory that the application cannot be made, nor the mortgage authorized or executed by the vestry or trustees, unless a majority of the corporators ask for the authority and sanction the act; in short, that an application to sell or mortgage the real estate of a religious corporation must be made or directed

by a vote of the congregation, and not merely of the vestry or trustees.

It may be confessed that such a view is to some extent sustained by the case of *Wyatt* agt. *Benson* (23 *Barb.*, 327.) It will be found, however, upon careful examination of the facts in that case, that such a rule does not necessarily result from that decision. That was a bill filed to stay a sale of the real estate of a religious corporation, proceedings for which had been instituted under the statute, upon the application of the trustees, but which had not been completed. It was shown to the satisfaction of the court (*v. p.* 335,) that a large majority of the corporators or members of the religious society in question were opposed to the sale asked for. That sale involved the removal of their place of worship, and there were special reasons and circumstances in the case calling, at least, for consideration and delay. So far as the case holds that a court of equity may be invoked to restrain the proceedings of trustees of religious corporations, and perhaps to annul their acts, on the ground that these proceedings are a violation of their duties, and in effect a fraud upon the corporation or its members, the decision may be sustained. What circumstances will justify the interposition of the court in such cases, must of course be a question to be determined in each particular case upon its own state of facts. But so far as the reasoning of the learned judge in that case was intended or may be understood to hold, that the courts cannot entertain an application for liberty to mortgage or convey the real estate of a religious corporation, unless it is made or directed by a vote of the corporators collectively, I am unable, with great respect for the able and ingenious reasoning by which that view is supported, to agree to that proposition. I dissent from the proposition and its results with the less hesitation, because it is, I believe, opposed to the practice in such cases throughout the state until the present time. I have conferred with my

associates in this district, and I learn that it has been and continues to be their uniform custom, as it has been mine, to grant such applications when duly made and sanctioned by the vestry or trustees of such corporations.

It is quite true, as the learned judge observes in *Wyatt agt. Benson*, that the statute authorizes the court to permit the conveyance of the real estate of a religious society or corporation, upon the application of the *corporation*. It is also true that the corporation consists of every member of the religious society entitled to vote at its elections. But it does not follow that there can be no valid act of such a corporation unless it is sanctioned or directed by a vote of a majority of all the corporators. No doubt it is intended that the control of the temporal affairs of these religious corporations shall be placed and preserved in the hands of the corporators. But the offices which the statute creates in such corporations are made and are filled for the purpose of providing for the management of their temporal affairs. The officers thus chosen are not trustees in the sense in which an individual becomes or is made a private trustee; they are simply officers of the corporation. As such officers they represent the corporation; they are its managing agents, and they may act for the corporation as fully as the directors or agents of an ordinary corporation may act in its behalf. A corporation ordinarily acts through its officers, and through them only. The power of managing its concerns is delegated to its officers, and they are to manage them for the common benefit of themselves and all the other corporators. These officers are liable, it may be, to judicial proceeding to control their action where it is fraudulent, or destructive of the rights and interests of the corporation. They are responsible, however, more directly and practically to the corporate body itself, through the power of the corporators to supersede them at their elections. But as long as they are in

office, they are the managing agents of the corporate body, and we are not required to go behind their action, or to demand the express sanction of their constituents, or of the whole body of corporators to any corporate act where, as in this case, the good faith of the transaction is not impeached, nor even its propriety questioned.

This is the rule to be gathered from the views expressed by the court of appeals in *Robertson* agt. *Bullions*, (1 *Kern.*, 243,) and indeed the doctrines I have now stated are taken almost in so many words from the opinion of Judge Selden in that case. It certainly does follow from the statute, as expounded by the court in that case, that a religious society incorporated under this statute consists of the members or electors of the society, and not merely of its trustees. But it does not follow that these trustees or officers have less powers than the officers of other corporations for that reason, or that they may not act for the corporation in respect to its property and affairs, in the same manner as the officers of other corporations.

In the absence of any restrictions upon their power in respect to such an application as the present, or of any requirement that there should be a vote of the congregation to sanction their action, it seems as clear to me that the vestry or trustees of a church may apply to this court to be allowed to sell or mortgage its real estate, as it is that these officers, and they only, can complete the transaction when it has been authorized. It is as much within their functions to apply to the court for the necesary authority as it is to take order for the execution of the necessary papers to complete the conveyance.

I have no difficulty in adhering to the practice which has prevailed in these cases, and the order asked by this petition will be granted.